IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PETROLEUM PIPE § | |
| AMERICAS CORP.   § | |
| § | |
| V.               § | C.A. NO. 4:07-CV-02210 |
| § | |
| § | |
| JINDAL SAW, LTD. § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO STAY LITIGATION AND COMPEL ARBITRATION**

Petroleum Pipe Americas Corp. ("PPA") files this Opposition to Defendant Jindal Saw Ltd.'s ("Jindal") Motion to Stay Litigation and Compel Arbitration ("Response").

### I.   INTRODUCTION AND FACTUAL BACKGROUND

1.   PPA filed suit in Texas state court against Jindal on May 30, 2007. The basis of PPA's claims involved thousands of joints of N-80 and L-80 pipe which, although certified by Jindal to meet API specifications, did not. In response to PPA's lawsuit, Jindal invoked this Court's jurisdiction by filing a removal notice and affirmatively moving this case to this Court. Jindal further invoked the litigation process by then answering PPA's lawsuit and asserting counterclaims against PPA. Jindal's counterclaim first introduced the Magnum settlement agreement (which contains the arbitration agreement forming the basis of Jindal's Motion to Compel Arbitration).

2.   Jindal's Counterclaim asserts one provision of the Magnum settlement agreement obligated PPA to purchase 6000 metric tons of pipe. Jindal's Counterclaim also contends the Magnum settlement agreement released PPA's right to make any claim against all pipe (not just P110 pipe) PPA received from Jindal prior to December 12, 2005. PPA did not share Jindal's interpretation of the Magnum settlement agreement. Based on Jindal's and PPA's differing

1

interpretations of the Magnum settlement agreement, PPA and Jindal submitted a Joint Submission of Contract Interpretations ("Joint Submission") to this Court to resolve the two issues and the potential application of the Magnum settlement agreement to this lawsuit.

3. Consistent with the plain wording of the settlement agreement, the Court interpreted the first provision of the Magnum settlement agreement as not obligating PPA to purchase 6,000 metric tons of Pipe from Jindal and interpreted the settlement agreement's release clause as only relating to claimed rejections of materials received and inspected by PPA up to December 12, 2005. As PPA's claims in this lawsuit deal only with claimed rejections of materials received and inspected by PPA <u>after</u> December 12, 2005, the Court's interpretation has resolved all issues potentially involving the Magnum settlement agreement in this case.[1]

4. The Court and PPA anticipated that clarity on these points would facilitate further settlement negotiations. Rather than meet to discuss possible settlement, as directed by the Court, and on the eve of the lawsuit's one year anniversary, Jindal now seeks to avoid the effect of the Court's interpretation and get another "bite at the apple" on these issues by asking the Court to stay litigation and **compel arbitration in London, England** under the Magnum settlement agreement.

5. The Court should deny Jindal's Motion to Stay Litigation and Compel Arbitration ("Motion") because:

- Based upon the Court's interpretation regarding the 6,000 metric tons of Pipe and the scope of the release clause, no issue in this lawsuit is subject to the arbitration provision of the Magnum settlement agreement; and

---

[1] Jindal's Motion to Stay Litigation and Compel Arbitration references a handful of pipe which Jindal claims was received, inspected and rejected by PPA prior to December 12, 2005. While PPA believes this pipe was removed from its damage model months ago, this information is irrelevant to Jindal's request to compel arbitration. PPA does not intend to seek any damages in this lawsuit for any material which was inspected in the United States and rejected *before* December 12, 2005. To the extent any such pipe still remains in PPA's damage calculations, these claims were released by this Court's interpretation of the Magnum settlement agreement (and are therefore irrelevant here).

2

- Even if the arbitration provision did apply to this lawsuit, Jindal has waived any right to arbitration by substantially invoking the judicial process to the detriment and prejudice of PPA.

For these reasons, Jindal's Motion must be denied.

## II. ARGUMENT AND AUTHORITIES

### A. PPA'S CLAIMS DO NOT FALL WITHIN THE SCOPE OF THE SETTLEMENT AGREEMENT'S ARBITRATION PROVISION.

6. The sole piece of support for Jindal's motion to compel arbitration is the January 9, 2006, Magnum settlement agreement. The Magnum settlement arose out of defective P-110 pipe which Jindal had supplied to PPA (again asserting the pipe met API specifications, when in fact, it did not) which resulted in well failures with Gunn Oil Company and Magnum. These were the claims which formed the basis of the Magnum settlement agreement. The Magnum settlement agreement states:

> "This Agreement shall constitute as full and final settlement of financial claims raised by [PPA] on [Jindal], **arising from claims brought by [Gun] and Magnum** against [PPA], in connection with material supplied from the said PO. This Agreement shall give full discharge to [Jindal] **in respect of the financial claims brought by [Gun] and Magnum** on [PPA] and by [PPA] on [Jindal]. This Agreement shall dispose of all claims raised on [Jindal] by [PPA] as contained in the claim letter dated 2.12.2005 of [PPA]."[2]

7. The Magnum settlement agreement lists seven contractual obligations which require action by either PPA or Jindal (only three could possibly be construed, even by Jindal, to apply to this litigation).

- Section 2 - Jindal agrees to adjust the sum of $588,253 against the future purchases of PPA up to 6000 Metric tons of pipe.[3]

---

[2] *See* the Magnum settlement agreement, Pg. 4 at § 9, a true and correct copy of which is attached as Exhibit A (emphasis added).
[3] *Id.*, Pg. 3 at § 2.

3

- Section 6 - Out of the $750,000, Jindal will adjust the remaining $200,000 against future supply of material by Jindal to PPA under Purchase Order numbers P2005/708 and P2005/713.[4]

- Section 7 - PPA will not make any claim against Jindal for any pipe which has been received, inspected and rejected by PPA up to December 12, 2005. PPS reserves the right to bring claims for inspections and rejections discovered after December 12, 2005.[5]

8.  The Court has already interpreted the effect of Section 2 & 7 of the Magnum settlement agreement. The only remaining section which requires further discussion is Section 6 (Jindal will adjust the remaining $200,000 against future supply of material by Jindal to PPA under Purchase Order numbers P2005/708 and P2005/713). Jindal claims Section 6 mandates arbitration in this lawsuit because Purchase Order numbers P2005/708 and P2005/713 are "mentioned" in section 6. Jindal states, "PPA's claims relate to these purchase orders, which are specifically addressed within the Contract."[6] Jindal's argument is nonsensical.

9.  When evaluating an arbitration clause, the Court must first review the scope of the agreement to determine whether the parties agreed to arbitrate their dispute. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). Section 6 of the Magnum settlement agreement involves Jindal **applying a $200,000 credit** against future purchases by PPA under Purchase Order numbers P2005/708 and P2005/713. If PPA were bringing a suit to obtain the $200,000 credit from Jindal, certainly arbitration would be appropriate under the agreement. However, the fact that Jindal agrees to apply a credit to future purchases of pipe under certain purchase orders does not mean defective pipe sold under those same purchase orders magically becomes subsumed by the arbitration clause.

10. The scope of the settlement agreement is careful to carve out the Gunn and Magnum claims and the defective pipe PPA has inspected and rejected prior to December 12,

---

4 *Id.*, Pg. 3 at § 6.
5 *Id.*, Pg. 3 at § 7.
6 *See* Defendant Jindal Saw, Ltd.'s Motion to Stay Litigation and Compel Arbitration at Pg. 6.

4

APEARCE\002957\00002\253077.2

2005, to cap Jindal's liability in the settlement. However, the Magnum settlement agreement specifically states it does not apply to pipe which has not been inspected and rejected by PPA after December 12, 2005. The Magnum settlement agreement release clause states:

> "**This clause relates only to material received up to 12th December 2005. [PPA] reserves the right to bring claims for claimed rejection in respect of material received after this date.**"[7]

11. These are the exact claims PPA has brought in this lawsuit, and these claims are not subject to the Magnum settlement agreement's arbitration clause. Although Jindal is correct in pointing out that federal policy generally favors arbitration, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res.*, 352 F.3d at 214.

### B. BY SUBSTANTIALLY INVOKING THE JUDICIAL PROCESS AND WAITING A YEAR TO FILE THIS MOTION, JINDAL WAIVED ANY RIGHT TO ARBITRATION.

12. Jindal waived any right to arbitration by "substantially invok[ing] the judicial process to the detriment [and] prejudice" of PPA. *Nicholas v. M.W. Kellogg Co.*, Civil Action No. H-07-2684, 2008 WL 379660, at *2 (S.D. Tex. February 12, 2008) (citing *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999) (internal quotations omitted).

#### 1. *Jindal substantially invoked the judicial process.*

13. When evaluating whether a waiver has occurred, the Court must first consider whether the party seeking arbitration has substantially invoked the judicial process. "To invoke the judicial process, a party must . . . engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Nicholas*, 2008 WL 379660, at *2 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5 Cir. 2004) (internal quotations omitted). Jindal's counterclaim attempted to inject the Magnum

---

7 *See* Exhibit A, Pg. 3 at § 7.

settlement agreement into this case. Jindal did not seek to enforce the Magnum settlement agreement's arbitration clause. Instead, Jindal not only substantially invoked the judicial process, but clearly invoked *this Court's jurisdiction* by filing a removal action and removing this action to this Court.

14. Jindal then sought to obtain a judicial ruling on the merits of the claim it now seeks to arbitrate when it added its counterclaims, including asserting the only claims in this lawsuit Jindal argues are subject to the arbitration clause. *See, e.g., Nicholas*, 2008 WL 379660, at *3 (holding that Nicholas' conduct, beginning with her decision to file suit, was "clearly inconsistent with an intent to arbitrate;" in addition to filing suit, Nicholas litigated whether the case would proceed in state or federal court, participated in discovery for ten months, and deposed a third party). Jindal undertook substantial litigation activity before asserting its right to arbitrate when it removed the case to federal court and filed its counterclaims. *Id.* at 3. Jindal has also substantially engaged in the federal discovery process for over a year; in fact, Jindal has had numerous discovery conferences regarding the production of documents and PPA has produced thousands of documents to Jindal over the past year.

15. Yet Jindal's repeated use of the litigation and discovery process has demonstrated its desire to resolve the dispute through litigation and, in doing so, clearly invoked the judicial process. It was not until Jindal received an unfavorable ruling from this Court (on a ruling Jindal requested) that Jindal sought to invoke arbitration.

**2.  *Invoking Arbitration in London, England would prejudice PPA.***

16. Even assuming the Magnum settlement agreement somehow encompasses PPA's claims in this lawsuit (which PPA denies for a litany of reasons), Jindal's invoking the judicial process and now belatedly seeking arbitration <u>substantially</u> prejudices PPA.

6

17.     Prejudice is defined as "the inherent unfairness--in terms of delay, expense, or damage to a party's legal position--that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* (quoting *Joseph Chris Personnel Servs. Inc. v. Rossi*, No. 06-20235, 2007 WL 2948578 at *4 (5th Cir. Oct.10, 2007) (internal quotations omitted).

18.     Jindal filed its Motion on the heels of this Court's interpretation of two disputed issues in this case Jindal claimed involved the Magnum settlement agreement. Clearly unhappy with this Court's decision, Jindal now seeks to manipulate the system to get a "second bite at the apple" by seeking arbitration so Jindal can attempt to reargue these same issues in London under English Law. *See, e.g., Killion v. Creative Solutions in Health-Care at Granbury, LLC*, No. Civ. A. 402CV853Y, 2003 WL 21321263, at 3 (N.D. Tex. June 3, 2003) ("The defendant's removal and subsequent filing of a second motion to compel arbitration after the first motion was denied by the state court appears to be an attempt by the defendant to manipulate the system to get a 'second bite at the apple.' The Court does not view the defendant's efforts favorably.").

19.     In this case, Jindal cannot dispute they have:

- removed this case to federal court;

- answered PPA's lawsuit and filed counterclaims (specifically involving the Magnum settlement agreement – which contains the arbitration clause at issue);

- participated in discovery;

- participated in numerous discovery meetings with counsel for PPA;

- waited twelve months before raising the issue of arbitration;

- sought a ruling and interpretations from the court regarding the settlement agreement at issue; and

- has forced PPA to incur a years worth of attorney's fees and litigation expenses prior to filing a motion to compel arbitration;

7

20. Based on these actions, even assuming Jindal had a right to compel arbitration, Jindal has waived its right to compel arbitration.

### III. CONCLUSION AND PRAYER

21. Jindal has waived any right to arbitration by substantially invoking the judicial process to the detriment and prejudice of PPA and PPA's claims do not fall within the scope of the arbitration provision of the settlement agreement. Petroleum Pipe Americas Corp. therefore requests that the Court deny Jindal Saw Ltd.'s Motion to Stay Litigation and Compel Arbitration. Petroleum Pipe Americas Corp. also requests such other and further relief as to which it may be entitled.

Respectfully submitted,

**BOYAR & MILLER, P.C.**

/s/David Bond
David Bond
Federal ID: 1372
Texas State Bar No. 02582400
4265 San Felipe, Suite 1200
Houston, Texas 77027
Telephone: (713) 850-7766
Telecopier: (713) 552-1758
Email: dbond@boyarmiller.com

ATTORNEY IN CHARGE FOR
PLAINTIFF

APEARCE\002957\00002\253077.2

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing was served on June 2, 2008 by the electronic case filing system, if available, or by United States Mail, First Class, postage prepaid, on the following parties:

Hunter M. Barrow
Charles A. Lestage
Thompson & Knight, L.L.P.
333 Clay Street, Suite 3300
Houston, Texas 77002
Telephone: (713) 654-8111
Facsimile: (713) 654-1871

ATTORNEYS FOR DEFENDANT

/s/David M. Bond
David M. Bond

APEARCE\002957\00002\253077.2

# AGREEMENT

THIS AGREEMENT made on the 9 day of January 2006 between JINDAL SAW LIMITED ( JSL ) a Company registered under the laws of India, having its Registered Office at A-1 UPSIDC Industrial Area, Nandgaon Road, Kosi Kalan, Distt. Mathura - 281403, U.P, India and Corporate Office at Jindal Centre, 12 Bhikaiji Cama Place, New Delhi-110066, India of the One Part through its authorized representative Mr. Avneesh Sharma, Zonal Manager (Marketing)

AND

PETROLEUM PIPE AMERICAS (PPA) a Company registered under the laws of Texas having its Registered Office at 1800 West Loop South, Ste 1810, Houston, Texas 77027 and Corporate Office at 1800 West Loop South, Ste 1810 Houston, Texas 77027 which expression shall, unless repugnant to the context, shall include its successors and assigns of the Other Part through its authorized representative Mrs. Jody Beck, President MANIFESTLY DEMONSTRATE AND RECORD the Settlement between the parties arising out of financial claims raised by the SECOND PARTY on the FIRST PARTY.

## DEFINITIONS

The words used in the Agreement to have the meaning assigned:-

1. " Representation " means and includes all representations whether verbal or written made by the SECOND PARTY to the FIRST PARTY that SECOND PARTY has absolute authority to enter into this Agreement and bind themselves, its Holding Company and the Company of which the SECOND PARTY is the subsidiary "

2. " Financial Claims " means and includes all the claims of the SECOND PARTY raised on the FIRST PARTY as contained in the claim letter dated 2.12.2005 "

3. " Settlement " means this AGREEMENT relating to settlement of Financial Claims which have been raised by Gunn Oil Company and Magnum against SECOND PARTY and were advised in claim letter dated 2.12.05 "

4. " Put on Hold " means Material the use of which has been suspended as of now.

5. " PPG " means Petroleum Pipes Group Ltd registered under the laws of England having its Registered Office at-14 New Street, London, England and engaged in the business of distributing oilfield tubular goods

6. " PPME " means Petroleum Pipes Middle East Company registered under the laws of Jebel Ali Free Zone, Dubai, United Arab Emirates, having its Registered Office at Office 526-529, LOB 14, Jebel Ali Free Zone, Dubai, UAE and engaged in the business of distributing oilfield tubular goods

7. " TKS " means Thyssen Krupp Steel Services a Company registered under the laws of Delaware, having its Registered Office at 22355 W. 11 Mile Road, Southfield, MI 48034 and engaged in the business of Materials Distribution and associated with the FIRST PARTY, PPME and PPC as *financial partner of PPA.*

8. " GOC " means Gunn Oil Company registered under the laws of Texas having its registered office at Wichita Falls, Texas and engaged in the business of oil and gas exploration and production. This is the Company to whom the SECOND PARTY has


CINDY A. HENKHAUS
MY COMMISSION EXPIRES
June 25, 2006


EXHIBIT
A



Jindal 000038

further supplied the product supplied by FIRST PARTY to SECOND PARTY.

9. " Magnum " means Magnum Producing, LP a Company registered under the laws of Texas having its Registered Office at Corpus Christi, Texas and engaged in the business of Oil and Gas Exploration and Production. This is the Company to whom the SECOND PARTY has further supplied the product supplied by FIRST PARTY to SECOND PARTY.

10. " P 110 " means material of specification 5 ½" 17# LTC R3 P 110

11. " PO " means Purchase Order No.PPME/2514-11/2004-dated 23/11/04 hereinafter called " the said PO ")

12. " OA " means Order Acceptance No. 04/469 dated 25/11/04 (hereinafter called " the said OA ")

13. " OA No. 1 " means Amendment no. 1 dated 20/12/04 to Order Acceptance No.04/469 dated 23/11/04 (hereinafter called " the said OA No.1")

14. " OA No.2 " means Amendment no. 2 dated 13/04/05 to Order Acceptance No.04/469 dated 23/11/04 (hereinafter called " the said OA No. 2 ")

WHEREAS

2. The SECOND PARTY has made clear representation to the FIRST PARTY that they have the necessary authority from their Board to bind themselves and their holding company PPG and its subsidiary PPME by the terms of this Agreement.

3. Based on the representations made by the SECOND PARTY, the FIRST PARTY has agreed to enter into this Agreement of Settlement.

4. PPME had placed the said PO on the FIRST PARTY for the supply of pipes of various descriptions including pipe of description P 110 for the regions / destinations detailed therein.

5. The said PO was accepted by the FIRST PARTY vide the said OA.

6. The FIRST PARTY issued the said OA No. 1 to, among other things, amend the address of the consignee as " Petroleum Pipe Americas, 1800 West Loop South, Suite 1810, Houston, TX 77027 USA " ( hereinafter called " SECOND PARTY " ) wherever the destination as per said PO was described as "AMERICAS".

7. PPME vide their fax dated 12.4.2005 addressed to the FIRST PARTY requested the FIRST PARTY that the contract for items and quantities as described in their fax be in the name of the SECOND PARTY who till now was the consignee for the said items and quantities.

8. Consequent to above, FIRST PARTY issued the said OA No.2 changing name of the buyer/customer from PPME to SECOND PARTY

9. FIRST PARTY has supplied material to SECOND PARTY covered by the said OA No.2 vide its invoices no 49, 53, 55, 62, 002, 004, 21, 30 the payment whereof was received by FIRST PARTY from the SECOND PARTY in due course.



CINDY A. HENKHAUS
MY COMMISSION EXPIRES
June 25, 2006



Jindal 000089

10. SECOND PARTY has supplied the material bought from FIRST PARTY under the said PO to several of its customers including GOC and Magnum.

11. GOC and MAGNUM have raised claims on SECOND PARTY for failure during usage of P 110 pipe supplied by the SECOND PARTY, out of material under the said PO.

12. Pursuant to GOC and Magnum claims as above, the SECOND PARTY raised its claims on the FIRST PARTY vide their claim letter dated 2.12.2005

13. The SECOND PARTY has put on hold 497 MT P 110 material bought from the FIRST PARTY under the said PO. Further the SECOND PARTY has put on hold 753 MT P 110 material bought from the FIRST PARTY under Purchase Orders subsequent to the said PO.

14. In this regard to settle the issues raised by the SECOND PARTY vide their claim letter dated 2.12.2005, a meeting was held at Jindal Saw Ltd. Sinnar, District Nashik, Maharashtra, India on 12.12.2005 between the FIRST PARTY on the one hand and SECOND PARTY together with TKS on the other hand.

NOW, IT IS MUTUALLY AGREED BETWEEN THE PARTIES AS UNDER :-

1. The FIRST PARTY shall take back from the SECOND PARTY approx. 497 MT P 110 material valued at USD 588253 supplied under the said PO.

2. The FIRST PARTY agrees to adjust the sum of USD 588253 against future supply of material to the extent of 6000 MT to be made to the SECOND PARTY.

3. The SECOND PARTY agrees to finally accept the balance quantity of approx 753 MT of P 110 material currently on hold. FIRST PARTY confirms that this material meets API specification.

4. The FIRST PARTY agrees to pay and the SECOND PARTY agrees to accept a sum of USD 750000 ( US Dollars Seven Hundred Fifty Thousand) in full and final settlement of of all claims brought by GOC and Magnum against SECOND PARTY, as set out in the claim letter dated 2.12.2005.This Agreement shall dispose of all the claims raised on the FIRST PARTY by the SECOND PARTY pursuant to the claims raised by GOC and Magnum on the SECOND PARTY.

5. Out of this sum of USD 750000 as above, the FIRST PARTY undertakes to pay within 15 days of the signing of this settlement agreement (subject to applicable exchange control regulations) a sum of USD 550000 by way of telegraphic transfer evidenced by a swift transmission message. SECOND PARTY hereby undertakes to make settlement to GOC and Magnum within 7 working days of receipt of wire transfer from FIRST PARTY. SECOND PARTY further undertakes to provide evidence of such financial settlement to GOC and Magnum to FIRST PARTY within 7 working days of receipt of wire transfer from FIRST PARTY

6. The FIRST PARTY agrees to adjust the balance sum of USD 200000 against future supply of material by the FIRST PARTY to the SECOND PARTY under Purchase Order Nos. P2005/708 and P2005/713 issued by the SECOND PARTY on the FIRST PARTY.

7. SECOND PARTY will not raise any claim against the claimed rejection in their internal inspection carried out on any other material bought by the SECOND PARTY from the FIRST PARTY. This clause relates only to material received up to 12th December 2005 SECOND PARTY reserves the right to bring claims for claimed rejection in respect of material received after this date.

CINDY A. HENKHAUS
MY COMMISSION EXPIRES
June 25, 2006

Jindal 000090

8. FIRST PARTY to dispatch *further approx. 500 MT P 110* material manufactured and under hold at Nashik under product liability insurance cover. FIRST PARTY shall provide SECOND PARTY with a copy of product liability insurance policy within 15 days of signing this agreement. FIRST PARTY shall also provide SECOND PARTY with a letter from its insurers confirming that such material is expressly covered by the product liability insurance policy within 21 days of signing this agreement.

9. This Agreement shall constitute as full and final settlement of financial claims raised by the SECOND PARTY on the FIRST PARTY, arising from claims brought by GOC and Magnum against SECOND PARTY, in connection with material supplied from the said PO. This Agreement shall give full discharge to the FIRST PARTY in respect of the financial claims brought by GOC and Magnum on the SECOND PARTY and by the SECOND PARTY on the FIRST PARTY. This Agreement shall dispose of all the claims raised on the FIRST PARTY by the SECOND PARTY as contained in the claim letter dated 2.12.2005 of the SECOND PARTY.

10. INDEMNITY: In the event of any claim in this regard by any person whether claiming through or under the authority of the SECOND PARTY or otherwise, touching upon the financial claims as finally agreed and settled herein, the SECOND PARTY shall indemnify the FIRST PARTY to the extent any such claim is lodged and loss caused to the FIRST PARTY either by an act of commission/ omission on the part of the SECOND PARTY or any person claiming through or under the specific/ implied authority of the SECOND PARTY. This clause shall, however, apply only in respect of the claims brought by GOC and Magnum against the SECOND PARTY as stated herein above, and shall expressly not apply to any future claims which may be brought by any party in respect of 753 MT of P 110 material presently on hold in Houston.

11. SETTLEMENT OF DISPUTE BY ARBITRATION

The parties agree to have the dispute if any to have the same arbitrated than litigated. All disputes arising in connection with the present contract shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by a Sole Arbitrator appointed in accordance with the said Rules. The law governing the contract and the arbitration procedure shall be English law. The place of arbitration shall be London. The parties agree and authorize the Arbitral Tribunal to be guided by equitable considerations with full regard to the applicable law. The Arbitral Tribunal shall further be at liberty to interpret legal rules more leniently and not to be bound by the legal technicalities.

IN WITNESS WHEREOF the parties have signed and executed this Agreement through its authorized representatives to bind the parties on this 9 day of January 2006.

FIRST PARTY
JINDAL SAW LIMITED

Through its authorized representative
AVNEESH SHARMA.

SECOND PARTY
PETROLEUM PIPE AMERICAS

Mrs. Jody Beck
President

CINDY A. HENKHAUS
MY COMMISSION EXPIRES
June 25, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PETROLEUM PIPE AMERICAS CORP. | § § § |
| V. | §   CIVIL ACTION NO. H 06-0645 § § § |
| JINDAL SAW, LTD. | § |

## ORDER DENYING DEFENDANT'S MOTION TO STAY LITIGATION AND COMPEL <u>ARBITRATION</u>

DEFENDANTS Motion to Stay Litigation and Compel Arbitration is DENIED.

SIGNED this _____ day of _____, 2008.


_____
JUDGE PRESIDING

10

APEARCE\002957\00002\253077.2