UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Petroleum Pipe Americas Corp.  § | |
| § | |
| Plaintiff,  § | |
| § | |
| versus  § | Civil Action 4:07-cv-02210 |
| § | |
| Jindal Saw, Ltd.,  § | |
| § | |
| Defendants.  § | |

# Opinion on Partial Summary Judgment

1. *Background.*

   Petroleum Pipe Americas sells pipe for the oil and gas industry. Jindal Saw manufactures pipe in India. Petroleum bought pipe from Jindal— grades N-80, L-80, and P-110. Petroleum then supplied the pipe to Gunn Oil and Magnum Producing; their wells failed from defective Jindal P110 pipe. Gunn and Magnum agreed to settle with Petroleum if it could settle with Jindal, and they did.

2. *Settlement.*

   The settlement was: (a) Jindal paid $750,000; $550,000 cash and $200,000 credit on two current purchase orders, for all claims by Gunn and Magnum against Petroleum; (b) Jindal took back 497 metric tons of the defective pipe and credited $588,253 to Petroleum "against the future supply of material to the extent of 6,000 metric tons"; (c) Petroleum released rejection of other material from Jindal delivered before December 12, 2005.

3. *Claim.*

   Later, Petroleum rejected Jindal L-80 and N-80 pipe based on additional inspections by Petroleum. Jindal objected to these inspections because Petroleum agreed to have the pipe inspected by a third-party in India.

Petroleum sued Jindal seeking $2.46 million for breach of contract and breach of warranty for the defective L-80 and N-80 pipe, but no P-110 pipe. Petroleum does not seek damages for L-80 and N-80 pipe that was inspected before December 12, 2005.

Jindal says that Petroleum breached two parts of the settlement because: (a) it did not buy 6,000 tons of pipe and (b) it rejected pipe delivered before December 12. Petroleum says it was not obliged to buy additional pipe and is allowed to reject pipe that it had not inspected before December 12.

4. *Ambiguity.*

A contract term is ambiguous when it is susceptible to multiple, reasonable interpretations. When a contract is not ambiguous, the court construes the contract as matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393-94 (Tex. 1983). The contract is not ambiguous.

5. *First Part.*

The first disputed part is:

> Jindal agrees to adjust the sum of USD 588, 253 against future supply of material to the extent of 6,000 metric tons to be made to Petroleum.

Jindal says that this obligates Petroleum to buy an additional 6,000 tons of pipe. Petroleum says it allows Petroleum a credit towards discretionary future purchases from Jindal.

The ordinary meaning of this part is that Petroleum has a credit of $588,253 for optional additional purchases of Jindal pipe. The value of the credit equals the value of the defective P-110 pipe taken back by Jindal under the settlement agreement. Petroleum did not breach this clause because it was not obliged to buy additional pipe from Jindal.

6. *Second Part.*

The second disputed part is:

> Petroleum will not raise any claim against the claimed rejection in their internal inspection carried out on any other material bought by Petroleum from Jindal. This clause relates only to material received up to 12 December 2005. Petroleum reserves

> the right to bring claims for claimed rejection in respect of
> material received after this date.

Omitting needless words, it says: Petroleum may not reject other material from Jindal that was delivered before December 12, 2005. The clause releases claims to all pipe delivered before December 12. Petroleum could not reject the pipe, whether it had inspected it or not.

Petroleum says *material* means only P-110 pipe; it is the subject of the parties' original dispute. Jindal says *material* means all grades of pipe delivered to Petroleum, including the N-80 and L-80 pipe.

The plain meaning of *material* encompasses all inventory supplies Jindal sold to Petroleum. Material means pipe.

Further, if the parties had intended the release to apply exclusively to P-110 pipe they would have specified it, as they did elsewhere in the contract. In their agreement the parties used the words *material*, *P-110 material* and *P-110 pipe* to refer to steel pipe, specifying the grade sometimes and not others. The parties used the broader word *material* in giving Petroleum credit for rejected pipe and describing orders for all grades of pipe.

Petroleum's argument, that material means only P-110 pipe, diminishes the meaning of the contract. Just as the credit provision does not limit Petroleum's use of it exclusively towards the purchase of P-110 pipe, the release provision does not limit Petroleum's rejection solely to P-110 pipe. The release applies to all pipe.

7. Conclusion.

Because Petroleum breached the settlement by rejecting pipe delivered before December 12, 2005, it will take nothing from Jindal. Petroleum has a credit of $588,253 towards the purchase of pipe from Jindal but is not obligated to buy anything.

Signed on March 9, 2010, at Houston, Texas.

---

Lynn N. Hughes
United States District Judge